IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| MATTHEW GUNNIN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:05-cv-268-MEF |
| | ) | (WO) |
| STATE FARM AND CASUALTY COMPANY, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

## I. INTRODUCTION

In this lawsuit, Plaintiff Matthew Gunnin ("Matthew") brings claims of breach of contract and bad faith against Defendant State Farm and Casualty Company ("State Farm"), the insurance company that issued a homeowner's insurance policy to Matthew's father. Matthew also seeks a declaration of his rights under the insurance policy. This cause is before the Court on State Farm's Motion for Summary Judgment (Doc. # 27) filed on October 25, 2006. For the reasons discussed below, that motion is due to be GRANTED.

## II. JURISDICTION

The court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §

1332 (diversity). The parties do not contest personal jurisdiction or venue, and the Court finds adequate allegations in support of both.

## III. STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party. An issue is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate

burden of proof. *Id.* at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson*, 477 U.S. at 255. After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c).

## IV. FACTS AND PROCEDURAL HISTORY

The Court has carefully considered all deposition excerpts and documents submitted in support of and in opposition to the motion. The submissions of the parties, viewed in the light most favorable to the non-moving party, establish the following facts:

On December 31, 2000, four female students at the Saint James School in Montgomery, Alabama met at one of their houses. Acting at the behest of Matthew and

another boy, Jack Simon ("Jack"), the girls took photographs of themselves using a digital camera. Matthew, who was seventeen at the time, was also a student at the Saint James School. The pictures included images of the girls in their underwear. In some of the pictures, the girls were partially or fully nude.

The girls emailed the photographs to Matthew and Jack on the understanding that the two boys would view the pictures and then delete them. Instead, the pictures were soon forwarded to other male classmates. While it is unclear exactly to whom Matthew and Jack sent the photographs,[1] the photographs ended up on screensavers at the school and, eventually, in the hands of school administrators. The Saint James School expelled the four girls, Matthew, and Jack.

On February 18, 2003, the girls' parents filed suit against Matthew in the Circuit Court of Montgomery County, Alabama. *See Bearden et al. v. Skinner et al.*, Case No. CV-03-461-R. Among other allegations in the *Bearden* complaint, the parents, suing individually and on behalf of their minor children, alleged negligence, conversion, fraud and defamation. Matthew, who was insured under his father's State Farm homeowner's insurance policy, immediately forwarded a copy of the complaint and summons to State Farm.

---

[1] "I e-mailed them to [Jack's cousin] and then there may be – I think I might have emailed them to two or three other people or another guy that was – probably two other people. Two other people I emailed them to." Transcript of October 4, 2006 Deposition of Matthew Ron Gunnin at 14.

On March 3, 2003, Tony Fimiano ("Fimiano"), a State Farms claims representative, contacted Matthew and his parents. Matthew sought to have the family's attorney, Hubert Taylor ("Taylor"), represent him. State Farm agreed on the condition that Taylor would accept State Farm's fee schedule. Taylor agreed to State Farm's terms. On March 14, 2003, State Farm sent a letter to Matthew in which State Farm agreed to undertake his defense but would do so under a reservation of rights "to deny defense and indemnity to [Matthew]." Among the reasons State Farm gave for this reservation was that there is a question whether the allegations of the Complaint arose out of personal injury, property damage or bodily injury as defined in the policy. On March 30, 2003, by order of the state court, Christopher Parkerson ("Parkerson") was appointed Matthew's guardian ad litem.

On April 2, 2003, another claims representative from State Farm, Shawn Simms ("Simms"), began investigating the coverage issues. On July 1, 2003, Fimiano communicated to Taylor that coverage issues were being resolved but a defense of Matthew would continue in the meantime. The same day, another State Farms claims representative, Angela Pierce ("Pierce"), told Taylor that a status letter would be sent no latter than September, 2003.

On September 16, 2003, State Farm sent Matthew a letter to the care of his father. State Farm explained it had decided to deny coverage of Matthew's claim and withdraw its defense of him. State Farm advised that its decision was based upon the fact that "allegations of the Complaint" did not meet the definition of either an "occurrence as defined by the policy" or "bodily injury as defined by the policy." The policy provided coverage and defense

for suits "brought against an insured for damages because of bodily injury or property damage to which this coverage applies, caused by an occurrence." Doc. 27-3 at 27. The policy contained the following definitions of those terms:

> 1. "**bodily injury**" means physical injury, sickness, or disease to a person. This includes required care, loss of services and death resulting therefrom.
>
> Bodily injury does not include:
>
> ...
>
> c. emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury unless it arises out of actual physical injury to some person.
>
> ...
>
> 7. "occurrence" ... means an accident, including exposure to conditions, which results in:
>
> a. **bodily injury**; or
>
> b. **property damage**.
>
> ...
>
> 8. "**property damage**" means physical damage to or destruction of tangible property, including loss of use of this property. Theft or conversion of property by any **insured** is not **property damage**.

Doc. 27-3 at 13-14. The letter further notified Matthew that "State Farm and Casualty Company will not be responsible for any legal fees associated or related to this litigation after September 30, 2003." The letter encouraged Matthew to immediately forward to State Farm

any "materials which would cause our decision to differ." State Farm did not directly inform Parkerson of the denial. Since the denial, Taylor has continued to represent Matthew in the state court action and Matthew's father, Larry Gunnin, has paid the subsequent legal expenses.

On February 25, 2005, Matthew filed this action against State Farm in the Circuit Court of Montgomery County, Alabama. On March 22, 2005, State Farm removed the case to this Court.

## V. DISCUSSION

### *A. Breach of Contract*

Count I of Gunnin's Complaint alleges that State Farm breached its contract by failing to defend him and discontinuing its defense of him. Whether or not an insurance company had a duty to defend its insured is determined by "the language of the insurance policy and by the allegations in the complaint giving rise to the action against the insured." *Ajdarodini v. State Auto Mut. Ins. Co.*, 628 So. 2d 312, 313 (Ala.1993); *Ladner & Co., Inc. v. Southern Guar. Ins. Co.*, 347 So. 2d 100, 102 (Ala.1977). "If the allegations of the injured party's complaint show an accident or occurrence which comes within the coverage of the policy, the insurer is obligated to defend regardless of the ultimate liability of the insured." *Chandler v. Alabama Mun. Ins. Co.*, 585 So. 2d 1365, 1367 (Ala.1991) (internal citations omitted). Where the allegations of the complaint show no injury alleged is within the coverage of the policy or where the allegations are ambiguous, "the court is not limited to the bare allegations

of the complaint . . but may also look to facts which may be proved by admissible evidence." *Id.*

Looking first at the State Farm policy at issue, the policy makes clear that State Farm would defend suits "brought against an insured for damages because of **bodily injury** or **property damage** to which this coverage applies, caused by an **occurrence**." Doc. 27-3 at 27 (emphasis added). The policy defines bodily injury as "physical injury, sickness or disease to a person" and specifically excludes from that definition "emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury unless it arises out of actual physical injury to some person." Doc. 27-3 at 13. The policy defines property damages as "physical damage to or destruction of tangible property, including the loss of use of this property" and contains the caveat that "theft or conversion of property by any insured is not property damage." Doc. 27-3 at 14.

Comparing the provisions of the policy with the allegations in the *Bearden* complaint, it is evident that no bodily injured is alleged in the *Bearden* complaint, at least as bodily injury is defined by the policy.[2] While the *Bearden* complaint alleges various mental injuries, such injuries are excluded by the policy unless they arise out of actual physical injury to some person and the *Bearden* complaint does not allege any such physical injury. The closest the

---

[2] The *Bearden* complaint alleges "public humiliation and embarrassment, defamation of the character of the minor Plaintiffs and the adult Plaintiffs and pain and suffering on the part of all the Plaintiffs" and, more specifically, that "all the Plaintiffs have been damaged by the defamatory conduct of the Defendants in that they have suffered the loss of income and social standing, loss of business and loss of position as students and parents at Saint James School." Doc. 27-3.

complaint comes to making an allegation of bodily injury is reference to the *Bearden* plaintiffs' "pain and suffering." However, pain and suffering does not necessarily equate with physical injury and, absent some specific allegation of physical injury, this Court will not equate the two.[3] *See, e.g.*, *Home Ins. Com. v. Hartford Fire Ins. Co.*, 379 F. Supp. 2d 1282, 1289 (M.D. Ala. 2005) (Coody, MJ) (applying South Carolina law).[4]

Furthermore, as to property damage, because the policy specifically excludes from coverage "[t]heft or conversion of property by an insured," it is clear that the *Bearden* complaint does not allege property damage as defined under the policy. While the *Bearden* complaint does allege loss of income and business, the policy covers only tangible property loss. Under Alabama law, losses of income and business are not considered tangible property

---

[3] Matthew cites *Twin City Fire Ins. Co. v. Colonial Life Ins. Co.* for the contention that a reference to "pain and suffering" sufficiently pleads the issue of physical damage. 124 F. Supp. 2d 1243, 1247 (M.D. Ala. 2000) (DeMent, J.). However, *Twin City* is distinguishable from the facts of the instant case because the policy at issue in *Twin City* defined bodily injury as including mental anguish. Furthermore, *Twin Cities* involved the application of South Carolina law where emotional trauma can constitute bodily injury. *Id.*

[4] Matthew counters by offering evidence outside of the allegations of the *Bearden* complaint to show that one of the parent Plaintiffs, Brenda Chambliss ("Chambliss"), suffered severe hair loss as a result of Matthew's actions. Chambliss' deposition was taken in a separate action in which neither was Matthew a defendant nor was Matthew's counsel present to cross-examine Chambliss. Furthermore, Matthew never forwarded the copy of the deposition to State Farm, even though State Farm's made clear in its denial letter that "[s]hould Matthew have materials which would cause [State Farm's] decision to differ, that information should be immediately forwarded to this office for consideration." Even under an "enhanced obligation of good faith ... to thoroughly investigate the cause of the insured's accident and the nature and severity of the plaintiff's injuries," *L&S Roofing Supply Co. v. St. Paul Fire & Marine Ins. Co.*, 521 So. 2d 1298, 1303 (Ala. 1987), State Farm's duty to investigate is not endless.

damage. *See American States Ins. Co. v. Martin*, 662 So. 2d 245, 248-49 (Ala. 1995) ("strictly economic losses like lost profits, loss of an anticipated benefit of a bargain, and loss of an investment, do not constitute damage or injury to 'tangible' property"); *Prince v. Higgins*, 572 So. 2d 1217, 1219 (Ala. 1990).

Matthew makes an additional argument that because he had a guardian *ad litem* and State Farm failed to notify that guardian *ad litem* of its denial of coverage and withdrawal of its defense of Matthew, the denial and withdrawal were both void.[5] Matthew cites cases for the proposition that "[w]hen a guardian ad litem is appointed for a minor in a court proceeding ... that minor is absolutely entitled to the benefits of the guardian ad litem at all times during that proceeding." Doc. 38 at 5 (internal quotations removed). Two cases cited by Matthew for this point, *Ridgeway v. Strickland*, 442 So. 2d 106, 109 (Ala. 1983) and *Citizen Walgreen Drug Agency, Inc. v. Gulf Ins. Co.*, 213 So. 2d 814 (Ala. 1968), both involve situations where a minor lacked a guardian *ad litem* at some point in the litigation. These cases discuss the consequences of a lack of such an appointment but do not address – even in any remote sense – whether an insurer such as State Farm has a duty to a keep an appointed guardian *ad litem* abreast of developments. Furthermore, Matthew does not inform the court of any part of the policy at issue that would control on this point. In light of the absence of any genuine issue as to the material facts, and its finding regarding the applicable law, the Court finds that State

---

[5] "Because ... the Defendant failed to inform the guardian ad litem of all developments relevant to policy coverage, it breached its enhanced obligation to the Plaintiff .... [and] the Defendant's action with regard to its withdrawal of a defense for the Plaintiff and its denial of coverage to the Plaintiff were void." Doc. 38 at 6.

Farm's Motion for Summary Judgment is due to be GRANTED as to this claim of breach of contract.[6]

### *B. Bad Faith*

Count Two of the Complaint alleges that State Farm acted in bad faith in withdrawing its defense of Matthew and in failing to give the guardian *ad litem* notice of this withdrawal. Under Alabama law, in order to succeed on a claim of bad faith refusal to cover an insurance claim, the insured must prove: (a) an insurance contract between the parties and a breach thereof by the insurer; (b) an intentional refusal to pay the insured's claim; (c) the absence of any reasonably legitimate or arguable reason for that refusal; and (d) the insurer's actual knowledge of the absence of any legitimate or arguable reason. *Loyal Am. Life Ins. Co., Inc. v. Mattiace*, 679 So. 2d 229, 234-34 (Ala. 1996).[7] Given that failure to prove contractual

---

[6] Given this finding, the Court finds it unnecessary to discuss State Farm's argument that Matthew lacks standing to assert claims for damages as this is now rendered moot.

[7] The Court considers Count Two to allege a "normal" bad faith claim as opposed to "abnormal" case of bad faith. "'Normal' bad faith claims are often referred to as directed verdict on the contract claim[s] because the [insured] must show that he is entitled to a directed verdict on the breach of contract claim in order to have the bad faith claim submitted to a jury." *Mut. Serv. Cas. Ins. Co. v. Henderson*, 368 F.3d 1309, 1314 (11th Cir. 2004) (citations and internal quotations omitted). By contrast, "[a]n insurer is liable for 'abnormal' bad faith when it intentionally or recklessly fails to conduct an adequate investigation of the facts and submit those facts to a thorough review [before denying coverage]." *Id.* (citations omitted). While Matthew alleges in his Response to State Farm's Motion for Summary Judgment that State Farm failed to investigate fully the hair loss by Chambliss, that allegation is not contained in the Complaint or any amendment thereto. Therefore, the Court will presume that the Complaint alleges a case of normal bad faith only.

liability is "fatal" to a bad faith claim, and in light of this Court's finding that this is a case of "normal bad faith" breach of contract only and that State Farm is entitled to judgment as a matter of law on the breach of contract claim, State Farm's motion for summary judgment on the bad faith claim is also due to be GRANTED.

## VI. CONCLUSION

For the foregoing reasons, it is hereby ORDERED as follows:

(1) The Motion for Summary Judgment (Doc. # 27) is GRANTED.

(2) In light of this Court's findings as to the breach of contract and bad faith claims, Matthew's request for a declaratory judgment is DENIED.

(3) The trial scheduled in this matter is CANCELLED.

A separate final judgment will be entered in accordance with this Memorandum Opinion and Order.

DONE this the 12th day of April, 2007.

/s/ Mark E. Fuller
CHIEF UNITED STATES DISTRICT JUDGE